**Edouard MARTIROSSIAN, Petitioner,**

v.

**John ASHCROFT, Attorney General,\* Respondent.**

No. 02–71890.
Agency No. A70–953–393.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 30, 2004.

Decided April 8, 2004.

---

\* John Ashcroft, Attorney General, is the proper respondent. The clerk shall amend the docket to reflect the above caption.

Robert Muller, Liner Yankelevitz et al, LLP, Law Offices of Paul L. Stanton, Los Angeles, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, CAC–District Counsel, Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, David V. Bernal, Carl H. McIntrye, Elisabeth Layton, Thomas K. Ragland, U.S. Department of Justice, Washington, DC, for Respondent.

Before HALL, TROTT, and CALLAHAN, Circuit Judges.

### MEMORANDUM **

Edouard Martirossian, a native and citizen of Georgia, petitions for review of the Board of Immigration Appeals' (the "BIA") denial of his motion to reopen seeking relief under the Convention Against Torture. We have jurisdiction pursuant to 8 U.S.C. § 1252(b). *Reyes v. Ashcroft*, 348 F.3d 1126, 1128 (9th Cir. 2003); *Kamalthus v. INS*, 251 F.3d 1279, 1281 (9th Cir.2001). We deny the petition for review.

Under the Convention Against Torture, Martirossian has the burden of establishing that it is more likely than not that he would be tortured if removed to Georgia. 8 C.F. R. § 208.16(c)(2); *Kamalthus v.*

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

---

*INS*, 251 F.3d at 1284. This court reviews the BIA's factual findings for substantial evidence. *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir.2003). Under this standard, a petitioner must show that the evidence compels a finding that he is likely to be tortured. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir.1996) (en banc).

Martirossian based his claim on three incidents that occurred in 1992 and 1993. According to Martirossian, in February 1992, when he was driving his ambulance, he was stopped at a road block by an armed paramilitary group, beaten and had his ambulance "appropriated." When he reported the theft of the ambulance to the police, they took the report and then asked him to withdraw it. When Martirossian refused to withdraw the complaint, the police beat him with a marble ashtray, breaking the middle finger on his left hand. Martirossian believes that the paramilitary group beat him and stole his ambulance because he is half Armenian and has an Armenian last name. He admits, however, that this was a time of general upheaval and that the police were also afraid of the paramilitary group. Martirossian testified that the paramilitary group disbanded after 1993, but claims that its members are now in the government and on the police force.

According to Martirossian, the second event occurred in August 1992, when the same paramilitary group, this time led by Martirossian's brother-in-law, broke into his house, vandalized the home, beat and threatened Martirossian, and kidnapped his wife and son. Martirossian testified that his brother-in-law opposed his sister's marriage to Martirossian because Martirossian is half Armenian.

The third incident occurred in 1993. Martirossian saw his ambulance and followed it until it stopped at an apartment building. The two members of the paramilitary group who had been in the ambulance entered the building. Martirossian then "hotwired" the ambulance and took it to his former boss. Later that day the police came to his place, arrested him, took him to a police station, charged him with stealing the ambulance, and beat him. Martirossian sustained injuries to his head and chest and was in the hospital for four days.

Although Martirossian contends that the cause for these incidents is that he is half Armenian, other explanations are reasonable. Martirossian may have been initially stopped by the paramilitary group because they wanted the ambulance. The second incident may have been based on his brother-in-law's animosity. The third incident resulted from Martirossian "repossessing" the ambulance from the paramilitary group. This act certainly weighs against his testimony that he was hiding from the paramilitary group.

We further note that these incidents happened over ten years ago, the paramilitary group has disbanded, and Martirossian does not claim that he ever spoke out against the paramilitary group or the government. In addition, the country report introduced into evidence before the immigration judge states that conditions in Georgia are improving.

We find that there is substantial evidence to support the BIA's determination that Martirossian is not likely to be tortured if returned to Georgia. Accordingly, the petition for review is denied.

**PETITION FOR REVIEW DENIED.**